# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE G. LAMB, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 21-638 |
| | : | |
| CVS HEALTH, | : | |
| *Defendant*. | : | |

## MEMORANDUM

JONES, II  J.                                                                                        May 28, 2021

## I.   INTRODUCTION

When Marie Lamb ("Plaintiff") and her son, Thomas, wanted to convert thirty (30) years' worth of family video home system ("VHS") tapes into digital versatile discs ("DVDs"), they sought out and utilized CVS ("Defendant")'s conversion services.  Somehow, after Plaintiff's son delivered the tapes to Defendant, the tapes were either lost, misplaced, or destroyed.  Defendant has never provided Plaintiff with an explanation of how the tapes were lost or what efforts were made to locate them.  Because of this, Plaintiff filed suit.  Presently, Defendant has pending a Partial Motion for Judgment on the Pleadings as to the following claims in Plaintiff's Complaint: Counts II (breach of contract), Count III (negligence), and Count IV (intentional infliction of emotional distress ("IIED")).  Additionally, Defendant claims Plaintiff has pleaded insufficient facts to warrant punitive damages.  For the reasons outlined herein, Defendant's Partial Motion for Judgment on the Pleadings [hereinafter Motion] (ECF No. 4) is granted in part and denied in part.

## II.   STATEMENT OF FACTS

Plaintiff is a sixty-six (66) year old mother and grandmother who, over the course of the last thirty (30) years, recorded important family events on sixteen (16) VHS tapes.  Compl. ¶ 4.  These tapes recorded baptisms, school plays, sporting events, and graduation and award ceremonies.  *Id*.  To help preserve their family history, Plaintiff and her son, Thomas, decided to

convert the VHS tapes to DVDs as a Christmas gift for the family. *Id*. at ¶ 5. Such conversion services were advertised on Defendant's website with about a three (3) week turnaround, and on December 3, 2019, Thomas, with Plaintiff's consent, took the tapes to Defendant's 259 Market Street, Philadelphia, PA location. *Id*. at ¶¶ 6-7.

Defendant's shift manager confirmed that Defendant could provide the conversion services and instructed Thomas to fill out the form receipts on sixteen (16) separate envelopes for the tapes. *Id*. at ¶ 7; *see* Receipts attached to Compl. as Exhibit A [hereinafter Exh. A]. Despite an advertised turnaround, the DVDs were not returned by Christmas. *Id*. at ¶ 9. When the DVDs had still not arrived by January 1, 2020, Defendant said it would check on the conversion process with the company processing the tapes. *Id*. After speaking with the conversion company, Defendant's management staff, and the United States Post Office, Defendant told Thomas that the tapes had been lost without further explanation. *Id*.

Frustrated, on June 22, 2020, Plaintiff wrote to Defendant's Chief Executive Officer, Larry J. Merlo, explaining the situation and requesting the return of the tapes and/or an explanation of what happened to them. *Id*. at ¶ 10; *see* Letter attached to Compl. as Exhibit B. Defendant never responded to Plaintiff's letter; instead, a company called Sedgwick Claims Management sent an email to Plaintiff on July 1, 2020 stating that they could not tell Plaintiff what happened because such facts were "client privileged information" that "cannot be shared." *Id*. at ¶ 11. Even more upset with Sedgwick's response, Plaintiff replied to the email, requesting the results of Defendant's investigation. *Id*. at ¶ 12. Sedgwick responded to Plaintiff on July 22, 2020, stating that Defendant was Sedgwick's client and instructing her to refer to the previous email response. *Id*. at 13.

## III.     PROCEDURAL HISTORY

On or about January 7, 2021, Plaintiff commenced this action against Defendant in the Court of Common Pleas of Philadelphia County, PA. *See* Notice of Removal, ECF No. 1.

Plaintiffs filed a four (4) Count Complaint, of which Counts II, III and IV are at issue today. Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendant removed the action to the United States District Court for the Eastern District of Pennsylvania on February 11, 2021. *See* Notice of Removal. On March 8, 2021, Defendant filed an Answer to Plaintiff's Complaint (ECF No. 3), and on March 31, 2021, Defendant filed the present Partial Motion for Judgment on the Pleadings (ECF No. 4). Plaintiff filed a Response in Opposition on April 15, 2021 (ECF No. 5), and Defendant submitted a Reply in Further Support of its Motion on April 21, 2021. ECF No. 6. Defendant's Motion is thus ripe for this Court's review.

### IV. STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Smith v. School Dist. of Philadelphia*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000); *Neil v. State Farm Fire and Cas. Co.*, 159 F. Supp. 2d 770, 771 (E.D. Pa. 2000). "Judgment [on the pleadings] will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

In reviewing a judgment on the pleadings, the Court can "consider only the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings." *State Farm Fire & Cas. Co. v. Ruby*, No. 16-2666, 2017 WL 445762, at *1 (E.D. Pa. Feb. 2, 2017). Courts must then "'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Jablonski v. Pan American World Airways, Inc.*, 863 F.3d 289, 290-291 (3d Cir. 1988) (quoting *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). "The [C]ourt, however, need not

accept as true legal conclusions or unwarranted factual inferences." *Burks v. City of Philadelphia*, 904 F. Supp. 421, 425 (E.D. Pa. 1995).

After accepting all warranted factual claims as true, the Court must "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plaintiff's complaint must not only allege entitlement to relief but must also demonstrate such entitlement with sufficient facts to push the claim "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 678-679).

V. DISCUSSION

A. Count II: Plaintiff's Breach of Contract Claims

Count two (2) of Plaintiff's Complaint alleges, "[Defendant] breached the contract with [Plaintiff] by failing to return the converted DVDs to [Plaintiff], or the original VHS tapes, and by failing to inform [Plaintiff] as to what happened to the VHS tapes or DVDs and whether they were lost or destroyed." Compl. ¶ 19. Defendant asserts that Plaintiff's son, Thomas, not Plaintiff, is the only party in contract with Defendant, so Plaintiff cannot recover any contractual damages. Mot. 8. Plaintiff responds that she is the owner of the VHS tapes who consented to and made her son her agent in engaging with Defendant. Accordingly, Plaintiff alleges the ability to recover under agency principles and a bailor-bailee relationship. Having reviewed the filings and facts of this case, the Court agrees with Plaintiff.

"To state a claim for breach of contract, [Plaintiff] must allege (1) a[n existing] contract between the parties; (2) a breach of the contract; (3) damages flowing therefrom; and (4) that the

party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, the first factor is at issue because the parties dispute whether a contract between them ever existed. This dispute arises because Plaintiff, herself, was not the person who went to Defendant's store, even though Thomas was acting on her behalf and with her property. With such facts, it is clear to the Court that Thomas was acting as Plaintiff's agent. Thus, when Thomas gave the VHS tapes over to Defendant, this created a bailment contract between the parties.

"Under Pennsylvania law, '[a] bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions[,] or kept until he reclaims it.'" *Fishman Org., Inc. v. Frick Transfer, Inc.*, No. 11-4598, 2012 WL 3030170, at *3 (E.D. Pa. July 25, 2012) (quoting *Price v. Brown*, 680 A.2d 1149, 1151 (Pa. 1996)). A bailment contract may be implied when "the natural and just interpretation of the acts of the parties warrants such conclusion." *Lear Inc. v. Eddy*, 749 A.2d 971, 973 (Pa. Super. Ct. 2000) (internal quotation marks omitted).

Here, Plaintiff's agent, acting as a bailor, delivered her tapes to Defendant for the purpose of utilizing Defendant's conversion services. Plaintiff and her agent-bailor expected the tapes to remain safe in the Defendant-bailee's care, even while the VHS tapes were sent off for conversion. Defendant-bailee gave the agent-bailor receipts in exchange for each of the tapes. *See* Exh. A. The receipt given to Thomas, though intended to limit liability if the tapes were lost or destroyed, imply that Defendant recognized and accepted the duty to care for the bailor's possessions. *See id*. Given these circumstances, "the natural and just interpretation" of the parties' conduct suggests that the parties created a bailment contract. *Lear Inc.*, 729 A.2d at 973.

A claim for breach of a bailment contract in Pennsylvania proceeds under a burden-shifting framework. First, the bailor must "establish a prima facie case by showing 'that personalty has been delivered to the bailee, a demand for return of the bailed goods has been made, and the bailee has failed to return the personalty.'" *Fishman Org.*, 2012 WL 3030170, at *3 (quoting *Price*, 680 A.2d at 1152). Plaintiff has met this prima facie showing. Neither party disputes that Plaintiff's tapes were delivered to Defendant, Plaintiff and her agent-bailor made demands for their return, and Defendant has failed to return the tapes or the converted DVDs or disclose the location of such items.

Having made this prima facie showing, the burden shifts to the bailee to account for the loss. *Id*. "If the bailee fails to account for the loss, then the law presumes the bailee failed to exercise the duty of care required by the bailment agreement." *Id*. If, however, the bailee can "show[] that the personalty was lost and the manner in which it was lost, and the evidence does not disclose a lack of due care on [the bailee's] part, then the burden of proof again shifts to the bailor who must prove negligence on the part of the bailee." *Price*, 680 A.2d at 1152. Though bailments contracts originate in the law of contract, liability is premised in tort negligence theory, "and the bailee 'will be held liable for loss of or damage to the bailed property only upon proof of a departure from the appropriate standard of care.'" *Fishman Org.*, 2012 WL 3030170, at *3 (quoting *American Enka Co. v. Wicaco Mach. Corp.*, 686 F.2d 1050, 1053 (3d Cir. 1982)).

At this early stage in the proceedings, it would be premature for the Court to make any further determinations in the burden-shifting bailment analysis. The benefit of discovery will reveal how Defendant handled the VHS tapes or DVDs, and whether such handling violated any standards of care. Accordingly, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Count II breach of contract claim is denied.

### B. Count III: Plaintiff's Negligence Claim

In Count III of her Complaint, Plaintiff states that Defendant breached its "duty of care and was negligent" in handling her VHS tapes and/or DVDs and in failing to reveal the results of any investigation in the matter. Compl. ¶¶ 22-23. Defendant responds that it owed no duty to Plaintiff and could not have foreseen the potential injury to her. Mot. 13-14. In retort, Plaintiff reiterates that her agency/bailment relationship creates a duty between the parties. Response in Opposition 2-3. Having reviewed the filings, the Court finds that, without reason to differentiate Plaintiff's negligence and contract claims, her negligence claim is barred by the gist-of-the-action doctrine.

Gist-of-the-action doctrine "preclude[s] a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). The tort claims barred are those:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract.

*Id*. (internal citations omitted). "The gist-of-the-action doctrine is a theory under common law 'designed to maintain the conceptual distinction between breach of contract claims and tort claims.'" *Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 13 (Pa. Super. Ct. 2002)).

Here, Plaintiff fails to make the distinction between her breach of contract and negligence claim. Plaintiff states that Defendant, "as the bailee who took possession of the 16 family history tapes had a duty to take care of them." Response in Opposition 3. Plaintiff has failed to show that Defendant is liable, independent from any alleged breach of the bailment contract, in tort.

Without such showing, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Count III negligence claim must be granted.

### C. Count VI: Plaintiff's IIED Claim

Plaintiff brings a claim of IIED, stating that she suffered "traumatic loss" and "emotional distress" due to Defendant's "callous and reckless treatment." Compl. ¶ 26. Defendant disputes whether Plaintiff has presented a prima facie case for IIED because not only has she failed to suggest that Defendant's conduct was "extreme outrageous, reckless, or even intentional," but even if she did, she failed to plead the requisite physical injury. Mot. 16. Having reviewed all the filings, the Court agrees with Defendant.

It is well-settled that "'Pennsylvania courts recognize a cause of action under the Restatement (Second) of Torts section 46 (1965) for the intentional infliction of emotional distress.'" *Marchese v. Umstead*, 110 F. Supp. 2d 361, 372 (E.D. Pa. 2000) (citing *Trans Penn Wax Corp. v. McCandles*, 50 F.3d 217, 232 (3d Cir. 1995)). To successfully plead IIED, a plaintiff must prove four (4) elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979). It is well settled that a "plaintiff must suffer some type of resulting physical harm because of the defendant['s] outrageous conduct." *Kane v. Chester County Dept. of Children, Youth, and Families*, 10 F. Supp. 3d 671, 693 (E.D. Pa. 2014).

Here, Plaintiff has failed to plead a prima facie case of IIED because she has not shown how Defendant's conduct meets the requisite outrageousness standard. For an IIED claim to proceed, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Marchese*, 110 F. Supp. 2d at 372 (citation omitted). A claim of

IIED is reserved for the most egregious actions. *See Chuy*, 595 F.2d at 1274-1275 (Finding IIED possible where a doctor knowingly and wrongfully diagnosed a professional athlete with a disease that ultimately, ended the athlete's career); *Papieves v. Lawrence*, A.2d 118, 121 (Pa. 1970) (Holding defendant's conduct as egregious where, after striking and killing plaintiff's son with a car and failing to notify authorities or seek medical help, the defendant buried the body in a field where it was discovered and returned to the parents two (2) months later); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236, 1238 (Pa. Super Ct. 1981) (Determining an IIED claim was appropriate where defendants intentionally fabricated records to suggest that the plaintiff had killed someone and led to an indictment for homicide).

While Plaintiff claims that "[Defendant] certainly knew or should have known that intentional or reckless misconduct resulting in the loss or destruction of the tapes would cause severe emotional distress," such alleged carelessness cannot be considered "utterly intolerable in a civilized community." Response in Opposition 4; *Marchese*, 110 F. Supp. 2d at 372 (internal citation omitted). In fact, Plaintiff states that it was Defendant's "misconduct in repeatedly refusing to disclose to [Plaintiff] what happened to her 16 invaluable and irreplaceable family history tapes[, not Defendant's actual carelessness in losing the tapes,]...[that] satisfies the pleading requirement for an IIED claim." Response in Opposition 4. Defendant's inability to explain what happened to Plaintiff's property, though understandably upsetting, is insufficient to warrant a claim of IIED.

Assuming *arguendo* that Defendant's conduct was utterly outrageous, Plaintiff still fails to allege any physical injury to state a prima facie case of IIED. "In Pennsylvania, a plaintiff must support the claim of physical harm resulting from emotional distress with competent expert medical evidence." *Kane*, 10 F. Supp. 3d at 693; *see Kazatsky v. King David Memorial Park*,

*Inc.*, 527 A. 2d 988, 995 (Pa. 1987) ("Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress.").

Though Plaintiff states, "[e]motional distress is not always manifested in physical injury or harm," she fails to cite, and this Court fails to find, any precedent allowing a claim of IIED to proceed without such injury. Response in Opposition 4. Even though Plaintiff appears to state that she suffered "psychological or mental harm," without further evidence of this harm physically manifesting itself or proof of any medical diagnosis or treatment, Plaintiff's Complaint is void of any physical injury. *Id*. Lacking evidence of Defendant's egregiousness and/or her own physical injury, Plaintiff's prima facie case of IIED fails.

Accordingly, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Count IV claim for intentional infliction of emotional distress is granted.[1]

## VI. CONCLUSION

For the reasons stated above, Defendant's Partial Motion for Judgment on the Pleadings is denied in part and granted in part. Accordingly, Counts III and IV of Plaintiff's Complaint and her claims for punitive damages are dismissed. Should Plaintiff wish to amend her Complaint, she will have thirty (30) days to do so.

An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.

---

[1] In her claim for IIED, Plaintiff also states that she is "entitled to an award of punitive and exemplary damages against [Defendant] in an amount to be proven at the time of trial." Compl. ¶ 30. Because Plaintiff's IIED claim is dismissed at this juncture, any allegation for punitive damages is also dismissed. Should Plaintiff choose to amend her Complaint to state a viable claim for IIED, she may also re-assert a claim for punitive damages.